UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80496-CIV-MARRA

NAOMI BELK,

Plaintiff,

vs.

BRANCH BANKING & TRUST CO.,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Branch Banking & Trust Co.'s Partial Motion to Dismiss Amended Complaint (DE 13). The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I.  Background

Plaintiff Naomi Belk ("Plaintiff") has filed a four-count Amended Complaint (Am. Compl, DE 11) against Defendant Branch Banking & Trust Co. ("Defendant") for disability discrimination in violation of the Florida Civil Rights Act ("FCRA"), Florida Statute § 760.10 (count one); retaliation in violation of the FCRA (count two); hostile work environment in violation of the FCRA (count three) and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (count four).

According to the allegations of the Amended Complaint, Plaintiff worked at Defendant's Palm Beach County location since 1973. (Am. Compl. ¶ 3.)  She began as a teller at Community Savings Bank until it merged with Bank Atlantic in 2001, at which time she was an assistant regional manager. (Am. Compl. ¶ ¶ 10-11.)  After the merger, she became branch manager.

(Am. Compl. ¶ 12.)  In 2010, Plaintiff stepped down from her branch manger position because she was diagnosed with HER2 breast cancer, an aggressive form of breast cancer, and assumed a customer service manager position. (Am. Compl. ¶¶ 13-15.) Plaintiff underwent multiple surgeries and between 2010 and 2012, her employer, Bank Atlantic, allowed her to take off time for medical treatment and she returned to work without incident. (Am. Compl. ¶¶ 17-18.)  For 37 years, Plaintiff received satisfactory performance reviews. (Am. Compl. ¶ 19.)

In 2012, Defendant merged with Bank Atlantic and Plaintiff became a retail service officer. (Am. Compl. ¶¶ 20-21.)  Her primary duty was to sell loans to clients by creating business outside of the branch and to walk-in customers. (Am. Compl. ¶ 25.)  Steven Rivera ("Rivera") was hired as the new branch manager and both he and Plaintiff were the only employees in the branch responsible for selling loans. (Am. Compl. ¶ 26.)  For walk-in loan customers, Defendant's ususal practice was to split them between Rivera and Plaintiff based on availability. (Am. Compl. ¶ 27.)

Not long after Rivera became supervisor, Plaintiff found out she needed surgery again, which was scheduled for April 26, 2013. (Am. Compl. ¶¶ 29-30.)  She applied for and received FMLA leave and returned to work on May 8, 2013.  She was, however, required to undergo weekly chemotherapy treatments. (Am. Compl. ¶¶ 30-31.)  Upon her return to work, she noticed a change in Rivera's and co-workers' attitude towards her.  (Am. Compl. ¶ 34.)  On her first day back, Rivera said, "I don't want you coming back messing up my office." (Am. Compl. ¶ 35.) Defendant also discontinued the practice of splitting the walk-in customers and employees were told to direct those customers to Rivera. (Am. Compl. ¶¶ 37-38.)  During a meeting, Plaintiff suggested that because the deposit slips had been moved out of the lobby, customers were less

2

likely to come into the bank. (Am. Compl. ¶ 20.) Plaintiff was told that was "none of her business" and was reprimanded in a performance review for speaking beyond the scope of job description. (Am. Compl. ¶ 41.)

On or about June 17, 2013, Plaintiff requested FMLA leave to start a more aggressive chemotherapy regimen, which was approved. (Am. Compl. ¶ ¶ 43-44.) Many of her loans were close to completion. (Am. Compl. ¶ 46.) Plaintiff asked Rivera to assist her in closing those loans during the time she was out, and she expected she would still get credit for the loans, given there was very little left to be done. (Am. Compl. ¶ ¶ 47-48.) When Plaintiff returned from FMLA leave, she learned Rivera took credit for closing her loans. (Am. Compl. ¶ 52.)

In April of 2014, while still undergoing chemotherapy, Defendant told Plaintiff it was eliminating all retail service officer positions. (Am. Compl. ¶ 53.) Despite her experience, Plaintiff was not considered for positions at the same or higher level and instead she was demoted to a branch banker position, and received a pay cut. (Am. Compl. ¶ ¶ 54-55.)

In 2014, a new bank manager, Marion Collette, was hired. Plaintiff told Collette about Rivera taking credit for her loans, but Collette did not take any action. (Am. Compl. ¶ 58.) On June 23, 2014, Plaintiff received an annual performance review which covered the period of April 2013 to April 2014. She received her first "below expectations" performance review for allegedly not meeting her loan sales goals. This was partly because she was out of work on FMLA leave and could not get loan sales during that time. (Am. Compl. ¶ ¶ 59-63.) Plaintiff sent an email to Rivera about her performance review, but did not receive any response. (Am. Compl. ¶ 64.)

Defendant's Sales and Service Manager, Babbette Bodden, told Plaintiff she was

disappointed with Plaintiff's performance.  When Plaintiff asked her to consider the fact she missed work due to FMLA leave, she stated, "You don't 'try' to go to chemotherapy, you just go to chemotherapy. Don't 'try' to get loans, just get loans." (Am. Compl. ¶ 65.)  Plaintiff then complained to Collette, telling her that Rivera took credit for her loans she processed before she went out on FMLA leave, but Collette did nothing to address the issue. (Am. Compl. ¶ 66.) As a result of that performance review, for the first time ever, Plaintiff was put on a 90 day performance improvement plan ("PIP") in September of 2014.  (Am. Compl. ¶ 67.)  The PIP was extended because Plaintiff took a vacation and there were holidays during her PIP. (Am. Compl. ¶ 69.)

Throughout the time Plaintiff was on the PIP, she made her sales goals and believed her sales goals were actually set higher than others in her position (Am. Compl. ¶ ¶ 70-71.)  In fact, her sales goals exceeded other employees in her position and none of them was put on a PIP. (Am. Compl. ¶ 72.)

In February of 2015, despite the fact that Plaintiff was not receiving chemotherapy and had not asked for additional FMLA leave, the human resources department asked Plaintiff to submit documentation from her doctor to show why her chemotherapy was affecting her work. (Am. Compl. ¶ 73.)  Plaintiff felt compelled to resign or risk termination. (Am. Compl. ¶ 78.)

Defendant moves to dismiss count one on the basis that the alleged discriminatory conduct does not constitute an adverse action under the FCRA and the facts do not allege that the conditions of employment were so unbearable to compel a reasonable person to resign. With respect to count two, Defendant claims Plaintiff fails to allege she engaged in protected activity and the retaliatory conduct does not constitute an adverse action under the FCRA.  Next,

Defendant contends that count three should be dismissed for failure to exhaust administrative remedies by not asserting a hostile work environment in her administrative charge and the count contains conclusory facts to support a hostile work environment claim. Lastly, Defendant contends that most of the purported alleged adverse actions in the FMLA count are improper.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

A. Count one

Count one of the Amended Complaint alleges disability discrimination under the FCRA[1] based on three different groupings of alleged discriminatory acts relating to (1) a poor performance review and written discipline; (2) an offensive comment and (3) a request for a doctor's note. (Am. Compl. ¶ 90.)  The parties agree that Plaintiff must plead an adverse employment action.  An adverse employment action is a "serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).  Defendant, however, claims that low evaluations may only be adverse employment actions if they lead to a more tangible form of adverse action.  Furthermore, Defendant claims that simply being placed on a PIP does not constitute an adverse action.  Likewise, Defendant states that offensive comments, holding Plaintiff to a higher standard and requesting medical documentation did not have any tangible effect on Plaintiff's employment.

Defendant relies upon cases holding that lower evaluations and placement on a PIP do not constitute adverse employment actions. See, e.g., Brown v. Snow, 440 F.3d 1259, 1265-66 (11th Cir. 2006) (a lower score on an employee's performance evaluation by itself is not actionable unless the employee can establish that the lower score led to a more tangible form of adverse action); Smith v. CA, Inc., No. 07–CV–78, 2008 WL 5427776, at *7 (M.D. Fla. Dec. 30, 2008) (the plaintiff's placement on a PIP did not constitute an adverse employment action because the

---

[1] Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA. Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004).  The FCRA is also construed in conformity with the American with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Tourville v. Securex, Inc., 769 So. 2d 491, 492 n.1 (Fla. Dist. Ct. App. 2000).

plan "did not result in a change to his compensation or his position" but merely required the plaintiff to improve his performance to comply with "policies already in existence" prior to his PIP placement.)  On the other hand, Plaintiff points to Smith v. Quintiles Transnational Corp. which found that placement on a PIP is "an explicitly disciplinary measure," especially when it resulted in "an increased workload, increased reporting requirements, and increased supervision." Smith v. Quintiles Transnational Corp., 509 F. Supp. 2d 1193, 1203 (M.D. Fla. 2007).

Smith, however, also noted that the PIP temporarily prevented Plaintiff from receiving pay raises or bonuses.  Furthermore, this Court has held that, even when a plaintiff's placement on a PIP increased a plaintiff's responsibilities and altered work requirements, if the change was unaccompanied by any tangible harm, such as a decrease in salary or a change in job title or classification, it did not amount to an adverse action.  See Brown v. Sybase, 287 F. Supp. 2d 1330, 1342 (S.D. Fla. 2003).  For this reason, the Court grants Plaintiff leave to amend the complaint to allege facts that show how placement on the PIP affected her job status.[2]

Lastly, the Court will examine the alleged constructive discharge.  "A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign." Beltrami v. Special Counsel, Inc., 170 F. App'x 61, 62 (11th Cir. 2006); see Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (same).  "The standard for proving constructive discharge is higher than the standard for proving a hostile work

---

[2] With respect to the request for medical documentation and the comments about Plaintiff's chemotherapy, the Court concludes that these acts do not constitute adverse actions. See DaCosta v. Birmingham Water Works & Sewer Bd., 256 F. App'x 283, 287 (11th Cir. 2007) (request for doctor note and abusive comments are not adverse actions).

environment." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001).  In Hipp, the employee alleged that he was verbally attacked in multiple public incidents, was informed that he should quit if he was unable to do his job, was told that he was doing a "lousy job" and that he was a terrible district manager.  Id. at 1233.  Hipp concluded that this behavior did not rise to the level of a constructive discharge.  Id. at 1237.

The Court concludes that the allegations alleged herein are not severe as in Hipp and therefore cannot constitute a constructive discharge as a matter of law.  Plaintiff is given leave to amend the Complaint to remedy this pleading deficiency, assuming she can do so in good faith.

B.  Count two

Next, Defendant moves to dismiss Plaintiff's retaliation claim, contending that Plaintiff fails to allege she engaged in any protected activity and she did not allege she was subjected to an adverse action.  Plaintiff, however, asserts that she alleged she engaged in protected activity by taking medical leave for surgery and chemotherapy.

To establish a prima facie case for retaliation, Plaintiff must show that 1) she engaged in protected activity; 2) she suffered an adverse employment action and 3) there is some causal relationship between her protected activity and the adverse employment action.  See Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997).

With respect to the adverse action prong, the Court adopts the reasoning supra and Plaintiff may amend the complaint to remedy this deficiency.[3]  The Court will next address

---

[3] Under Burlington v. Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), "the type of employer conduct considered actionable [in a retaliation claim] has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008).  Post-Burlington,

whether or not the Amended Complaint alleges a protected activity.

Courts have found that employees can establish a case of retaliation under the ADA[4] when there is evidence that an employee was terminated immediately after returning from medical leave.  Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003); see Williams v. Brunswick County Bd. of Educ., 440 F. App'x 169, 171 (4th Cir. 2011) (assuming without deciding that a medical leave request is a protected activity under the ADA); see also Cassimy v. Board of Educ. of Rockford Public Schools, Dist. No. 205, 461 F.3d 932, 938 (7th Cir. 2006) (a request for accommodation is a "statutorily protected activity" for the purposes of establishing a claim of retaliation under the ADA); Heisler v. Metropolitan Council, 339 F.3d 622, 630 n. 5 (8th Cir.2003) ("the ADA prohibits an employer from retaliating against an employee who seeks an accommodation in good faith"); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003) ("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC.")

Nonetheless, Defendant claims that taking medical leave is not protected activity under the FCRA and cites Ramjit v. Benco Dental Supply Co., 6:12–cv–528, 2012 WL 3024437 (M.D. Fla. July 24, 2012).  There, the plaintiff brought claims pursuant to Title VII and the FCRA for sex discrimination and retaliation. Id. at * 1.  The plaintiff claimed the defendant retaliated

---

the Eleventh Circuit has held that placement on a PIP that involved an extra assignment of duties and denial of training did not constitute an adverse action in a retaliation case.  Jarvis v. Siemens Med. Solutions USA, Inc., 460 F. App'x 851, 858 (11th Cir. 2012); see also Hall v. Siemens VDO Automotive, 481 F. App'x 499, 505 (11th Cir. 2012) (placement on PIP is not an adverse action for a retaliation claim).

[4] ADA retaliation claims, and therefore FCRA, are analyzed under the same framework for retaliation claims arising under Title VII. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).

against her for using her pregnancy benefits. Id. The court held that using pregnancy benefits does not fall under the anti-retaliation provision of Title VII because it is not neither an act that opposes any unlawful practice nor an act of participation in any investigation, proceeding or hearing. Id. at * 1-2.

The Court chooses not to follow Ranjit and instead follows the reasoning of courts who have held that taking medical leave can be protected activity for purposes of a FCRA claim when the underlying claim rests on disability discrimination. If an employer could retaliate against an employee for taking medical leave, it would undercut the goal of disability discrimination law.

In sum, Plaintiff is granted leave to amend that she was subject to an adverse action.

C. Count three

With respect to count three, Defendant argues that it should be dismissed for failure to exhaust administrative remedies because the administrative charge does not mention hostile work environment or harassment. (Admin. Charge, DE 1 at 16.) Additionally, Defendant contends the Amended Complaint fails to plead facts to state a hostile work environment claim.

The Eleventh Circuit has explained the purpose of administrative exhaustion:

> The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts. This Court further has noted that judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate.
>
> In light of the purpose of the EEOC exhaustion requirement, we have held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII. As such, this Court has noted that the scope of an EEOC complaint should not be strictly interpreted.

Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (internal quotation marks and citations omitted.

The Court concludes that the allegations of the Amended Complaint grew out of the allegations alleged in the administrative charge.  With respect to hostile environment, the charge does mention a comment by management that Plaintiff has included in her hostile environment claim as well as a request for documentation about how her medical treatment affected her work performance.  Under a liberal construction, the Court finds sufficient facts in the administrative charge to plead a hostile environment claim.

That stated, the Court finds that the Amended Complaint does not plead adequate facts to state a hostile environment claim.   A prima facie hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  The employee must prove five elements: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment  (3) that the harassment was based on her protected group; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of employment and create an abusive working environment; and (5) that the employer is responsible for the environment under a theory of either vicarious or direct liability. Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248-49 (11th Cir. 2014).

The severe or pervasive element asks whether the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive

work environment." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 577 (11th Cir. 2000), overruled on other grounds, Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008). This element has both an objective component and a subjective component. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). To be actionable, allegedly harassing behavior must be one that "a reasonable person would find hostile or abusive" and that Plaintiff subjectively perceives to be "abusive." Id.

Recently, the Eleventh Circuit addressed the pleading standard for a hostile environment claim based on disability and retaliation. Palmer v. McDonald, 624 F. App'x 699 (11th Cir. 2015). There, the plaintiff alleged "that his supervisor hastily gave verbal instructions, yelled at him, spoke to him in a loud voice, implied he was incompetent, scolded him, laughed out loud by his cubicle, . . . [and] yelled about his disability when he asked for an accommodation." Id. at 704. The Court found that these facts did not adequately plead a hostile environment claim. Id. at 703. Here, the allegations do not rise to the level in Palmer and therefore this claim must be dismissed.

Based on the following, the Court will dismiss count three and give Plaintiff leave to amend this count.

### D. Count four

Defendant moves to dismiss the FMLA claim on the ground that Plaintiff failed to allege that she suffered an adverse employment action, with the exception of the allegation of a demotion which Defendant concedes constitutes an adverse action.

To establish a prima facie retaliation claim under the FMLA, a plaintiff must demonstrate that: (1) she engaged in protected conduct under the FMLA; (2) she suffered an adverse

employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

Given that courts have borrowed the analytical framework used in Title VII cases for FMLA cases, the Court finds that the Court's analysis with respect to adverse action discussed supra applies here. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283 (11th Cir. 1999) (analysis is same under Title VII retaliation claim and FMLA retaliation claim). Thus, this claim may go forward on the allegation of demotion as the adverse action. With respect to the other actions alleged, Plaintiff may amend the complaint to allege she was subject to other adverse actions.

Based on the foregoing, the motion to dismiss the FMLA claim is granted in part and denied in part.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Branch Banking & Trust Co.'s Partial Motion to Dismiss Amended Complaint (DE 13) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is granted leave to amend the complaint within 15 days of the date of entry of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of August, 2016.

_____
KENNETH A. MARRA
United States District Judge